UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOHO CO., LTD., | Case No.: 23-cv-14720 |
| Plaintiff, | |
| v. | Judge: Honorable Franklin U. Valderrama |
| THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| | Magistrate: Honorable Jeffrey Cole |
| Defendant. | |

## MOTION TO DISSOLVE PRELIMINARY INJUNCTION

Defendant, eBay store named hobbykollectibles identified as defendant No. 133 in the above-captioned case ("Defendant"), submits this Motion to Dissolve the Preliminary Injunction.

Prior to filing this motion, Defendant made diligent efforts to engage in meet-and-confer discussions with Plaintiff's counsel. However, despite numerous attempts, Plaintiff's counsel has seemingly just wanted to resolve this with payment, rather than any merits.

### INTRODUCTION

This particular case is yet another case before this Court (the "Court"), that exhibits a remarkably similar pattern to hundreds of others. Legal Professor Eric Goldman identifies these cases as a "SAD Scheme". (Goldman, Eric, *A SAD Scheme of Abusive Intellectual Property Litigation* (November 20, 2023). 123 Columbia Law Review Forum 183 (2023), Santa Clara Univ. Legal Studies Research Paper No. 4381824, Available at SSRN: https://ssrn.com/abstract=4381824 or http://dx.doi.org/10.2139/ssrn.4381824).

In these cases, the plaintiffs initiate legal action against sizable groups of foreign defendants, alleging infringement. The legal proceedings commence with an ex parte temporary restraining order, freezing the defendants' online marketplace platforms and corresponding funds. Throughout the process, original defendants may be voluntarily dismissed, new defendants added, and default judgments entered against those who remain in the case. Given that the targeted defendants are typically foreign, (not residing in the US), service is often permitted via email. It is uncommon for these foreign defendants to contest the claims, even if properly served. This Court recently presided over such a case, (*Roblox Corporation. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified On Schedule A Hereto* 23-cv-01525). It saw no defendants appearing to contest the default judgment, resulting in a Final Judgment on September 15, 2023.

However, there is a very underhand and unjust reality going on. The defendants often discover the case only when they find their accounts are limited, listings have been removed, and funds in accounts frozen.

The uncertainty faced by the defendants includes potential business closures, restricted access to funds, and product removal without clear explanations. Email summons from the plaintiff's counsel might go unnoticed in junk mail, lacking explicit mention of a lawsuit or being sued. The defendants may be very wary of scams and might distrust the email, be wary about downloading attachments and also clicking links. Faced with time constraints or being unaware of preliminary injunction hearings, the defendants may pay without understanding the merits of their case. Small businesses, sole proprietors, and individuals struggle to find affordable legal representation familiar with state laws.

The plaintiffs often target anyone engaged in marketplace sales, overlooking the size of the entities involved. In a recent news report, a purported business reportedly discovered the case against them only after receiving default judgement. Despite the plaintiff's assertion that the defendant wasn't their intended target, the defendant still became part of the lawsuit. (Willman, Chris, *How Does a Mom Get Slapped With a $250,000 Judgment Over $380 of Homemade Luke Combs Merch? Experts Cite 'Cottage Industry' of Mass Counterfeit Suits in Illinois* [Online] (December 15, 2023). Variety, Available at: https://variety.com/2023/music/news/mass-lawsuits-luke-combs-tumblers-legal-experts-counterfeit-illinois-cottage-industry-1235841650/.)

This lack of due diligence raises questions about the legitimacy of injunctions granted. It prompts consideration of whether these defendants, often private individuals and small sellers, are paying settlements due to a lack of options and legal resources or being ignored by plaintiffs' counsels and left to default. The broader concern is whether plaintiffs and their counsel face any sanctions for their practices.

## FACTS ON PROCEDURAL HISTORY

1. Defendant is an eBay Store account registered on ebay.com, specializing in rare collectibles as declared in paragraphs 4 and 5 of the supporting Au Man Fei Declaration. **("Au Decl.").**

2. It is operated by Au Man Fei, a resident of Hong Kong. **(Au Decl. ¶¶ 3, 10 & 40).**

3. Plaintiff Toho Co. Ltd ("Plaintiff") filed this case on October 11, 2023, alleging trademark infringement and counterfeiting, false designation of origin, and copyright infringement. [Dkt. 1].

4. On October 12, 2023, the Court granted Plaintiff ex parte motion to file initial pleadings and related documents under seal, along with a fourteen (14) day

temporary restraining order ("TRO") and for electronic service of process. [Dkt. 33].

5. An extension of the TRO was granted on October 26, 2023 for a further fourteen days. [Dkt. 40].

6. The summons was served on November 6, 2023. Plaintiff obtained a preliminary injunction on November 9, 2023. [Dkt. 46].

7. Defendant filed and appearance on December 6, 2023. [Dkt. 60].

8. Defendant filed and answer on December 7, 2023. [Dkt. 61].

9. On December 21, 2023 Plaintiff moved for a default judgement, which was subsequently ordered by the Court on January 3, 2024. [Dkts. 67 & 73].

## BACKGROUND

Defendant's alleged infringing product was listed for sale on eBay before October 15, 2019. At the very least, that is four (4) years prior to this lawsuit. Defendant is not aware of the exact date it was listed, but it is clearly shown as available to purchase on eBay on Plaintiff's dated evidence. Defendant has attached the evidence Plaintiff provided along with Defendant's captions and comparison in the Exhibits E. **[EXHs. E].** Defendant only ever had 1 of the alleged infringing item. **(Au Decl. ¶16).** It is a rare vintage model kit released in 1998 or earlier. **(Au Decl. ¶35).** In March 2023, Defendant finally sold this rare model kit to a customer in Pennsylvania. **(Au Decl. ¶¶ 20 & 24).**

Plaintiff's evidence indicates an attempt to show it was possible to purchase the alleged infringing item on October 15, 2019. **(EXH E. Fig. 17).** If the item had been purchased there and then by Plaintiff, and subsequently shipped to them, they would know it was genuine. Almost four (4) years later, Plaintiff files a complaint alleging infringement,

*after* the item had long since sold. Plaintiff is unjustly attempting to be awarded for sitting on their rights for four years. The unjust asset restraint has cost Defendant financially. Defendant is unable to pay rent to keep to rare collectibles safe and secure. **(Au Decl. ¶¶ 38, 40 & 42).**

Defendant has contacted Plaintiff multiple time in order to be dismissed. **(EXHs C, D, H & I).** However, as Plaintiff has Defendant's money restrained, Plaintiff gains huge leverage against Defendant. Defendant is not prepared to pay money for something that is simply not true, just because Plaintiff has that leverage. **(Au Decl. ¶ 37).**

Defendant has an excellent reputation for selling legitimate collectables. **(EXH A).** Plaintiff insists on receipts, yet Defendant cannot provide receipts as many items are from Defendants own personal collection, purchased many years ago. **(Au Decl. ¶ 36).** Parties now have reached an impasse. Plaintiff has nothing to lose by keeping Defendant under the injunction, whereas as each day goes on Defendant in not making any sales, and being even further from being able to pay rent on its secure storage.

**LEGAL STANDARD**

"A motion to dissolve or modify a preliminary injunction is ordinarily subject to the same analysis as the original injunction." *U.S. Commodity Futures Trading Comm'n v. Garofalo,* No. 10 C2417, 2010WL 11245430, at *3 (N.D. Ill. Dec. 21, 2010).

Defendant respectfully asks the Court to ask, "[i]s the irreparable harm to the plaintiff if the injunction is dissolved, weighted by the probability that dissolution would be a mistake because the plaintiff will go on to win at trial, greater or less than the irreparable harm to the defendant if the injunction is not dissolved, weighted by the probability that allowing the injunction to continue in force would be a mistake because the defendant, not the plaintiff, will win at trial?" *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987).

## ARGUMENT

The Seventh Circuit has traditionally applied a presumption of irreparable harm in false advertising and trademark infringement suits. *Abbot Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 16 (7th Cir. 1992). This presumption underscores the urgency and necessity of injunctive relief to prevent potential irreparable damage to the plaintiff. However, it's crucial to note that this presumption is not absolute and can be rebutted by a defendant demonstrating specific circumstances or factors that mitigate the risk of irreparable harm. *See Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891, 903 (7th Cir. 2001) (holding, in a trademark case, that "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered").

A substantial and unexplained delay in seeking relief calls into question "how urgent the need for [preliminary] equitable relief really is". *Michigan v. U.S. Army Corps of Eng'rs,* 667 F.3d 765, 788 (7th Cir. 2011). Plaintiff's four-year delay in pursuing relief on their trademark claim surpasses the threshold, casting serious doubt on the appropriateness of granting the "extraordinary remedy" of a preliminary injunction. *Winter v. NRDC,* 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Such a prolonged delay raises questions about the immediacy and necessity of the relief sought, and challenges the equitable grounds for the extraordinary remedy of a preliminary injunction.

Numerous courts of appeals have upheld denials or reversed grants of preliminary injunctions based on much shorter delays in filing suits. For instance, the Ninth Circuit, in *Garcia v. Google, Inc.,* 786 F.3d 733, 746 (9th Cir. 2015) (en banc), considered a five-month delay, while the Federal Circuit, in *Apple, Inc. v. Samsung Elecs. Co.,* 678 F.3d 1314, 1325-26 (Fed. Cir. 2012), addressed a delay spanning several months. The Second Circuit, in *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir. 1995), addressed a nine-

month delay. Similarly, district court cases, such as *Ixmation, Inc. v. Switch Bulb Co.,* 2014 U.S. Dist. LEXIS 150787, 2014 WL 5420273, at *7-8 (N.D. Ill. Oct. 23, 2014) (four-and-a-half-month delay), and *MB Fin. Bank, N.A. v. MB Real Estate Servs.,* 2003 U.S. Dist. LEXIS 21051, 2003 WL 22765022, at *8 (N.D. Ill. Nov. 21, 2003) (eight-month delay), have similarly shown that even shorter delays can impact the granting of preliminary injunctions.

Remarkably, the longest delay ever tolerated by the Seventh Circuit appears to be ten months, as seen in *Vaughan Mfg. Co. v. Brikam Int'l, Inc.,* 814 F.2d 346, 351 (7th Cir. 1987), overruled on other grounds by *Two Pesos, Inc. v. Taco Cabana,* 505 U.S. 763, 766 n.4, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). This underscores that the four-year delay in the present case raises serious questions about the appropriateness of granting the extraordinary remedy of a preliminary injunction. *Kohler Co. v. Whistling Oak Apartments LLC*, Case No. 20-CV-1563, 1 (E.D. Wis. Jun. 14, 2021). ("A delay in seeking a preliminary injunction may serve to rebut the presumption of irreparable harm. *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F.Supp.3d 949, 952 (N.D. Ill. 2018) (holding that presumption of irreparable harm was rebutted when plaintiff delayed 18 months after learning of defendant's allegedly infringing conduct before filing suit and seeking a preliminary injunction) (citing, in part, *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001)).").

Defendant has already raised a laches defense in its filed answer [Dkt 61] along with many others defenses which Plaintiff has yet to respond to. See *Citibank*, 756F.2d at 276 ("Although a particular period of delay may not rise to the level of laches and there by bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.").

Plaintiff's assertion of irreparable harm is contradicted by the facts, particularly their own actions and significant delay. In this case, Plaintiff was aware of the alleged infringing

product for almost FOUR YEARS before filing a complaint and seeking a preliminary injunction against Defendant. This unjustified and lengthy delay serves as clear evidence of the lack of urgency or irreparable harm in Plaintiff's claims. It further underscores the plaintiff's complete lack of due diligence prior to filing, suggesting a strategic motive to utilize the defendants as financial targets in the absence of their appearance.

The preliminary Injunction was based on the same statements as the TRO; a series of false statements, misleading representations, and conclusory allegations put forth by the Plaintiff and their counsel. Plaintiff has hoodwinked the court in to believing the statements are facts and therefore Plaintiff has obtained the injunctions under false pretences. Notably, no factual evidence accompanied these claims. The alleged infringing item was not even on eBay when Plaintiff decided to file a complaint. The other allegations include assertions that the Defendant purportedly conceals its identity, resides and/or operates in the People's Republic of China, and employs multiple fictitious names and addresses, further alleging the regular transfer of funds to offshore accounts.

Moreover, Plaintiff's presentation consisted of nothing more than generalized statements. These conclusory statements fail to provide specific allegations, falling short of the necessary showing to warrant preliminary relief. The weight of delay is particularly significant against a moving party when, as in this case, they were aware of the underlying facts well before seeking relief. As a consequence of the preliminary injunction, the defendant suffered harm with its assets being frozen. **(Au Decl. ¶¶ 38 & 40-42).** Unless this Court dissolves the Preliminary Injunction, the continuous harm to the defendant would effectively result in shutting down the defendant's business, constituting irreparable harm.

To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting

activities". *Luxottica USA LLC v. The Partnerships & Unincorporated Associations Identified On Schedule "A",* No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015); see also, *H-D, U.S.A, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* 2021 U.S. Dist. LEXIS 187253, *11, 2021 WL 4459472.

At the time of the sale of the alleged infringing item in March 2023, the funds from that transaction were not retained in the account. The money currently restrained in the account pertains to sales of different products made shortly before the restraint and one sale subsequent to it. Importantly, these funds have no connection to the alleged infringing item, further emphasizing the lack of a direct link between the restrained funds and the specific transaction in question. **(Au Decl. ¶¶ 8 & 27).** Plaintiff is simply not entitled to wait for the cash machine to pay out.

## PLAINTIFF HAS NEVER BEEN ENTITLED TO A PRELIMINARY INJUNCTION

The legal standard to impose a preliminary injunction is well established. (1) Plaintiff must be likely to succeed on the merits of the action; (2) Plaintiff must be likely to suffer irreparable harm if an injunction is not issued; (3) and Balance of equities must tip in Plaintiff's favour. However, Plaintiff has clearly misled the court. Even if Plaintiff claims it did not, Defendant made Plaintiff aware of defects in its case on numerous occasions. **(Au Decl. ¶¶ 10, 14, 19, 29, 30, 33 & 34).** These should have been enough for Plaintiff arguing they protect their intellectual property, to re-look at their allegations and determine they did not apply to this Defendant. However, regardless of the information Defendant has given, Plaintiff wants money. It is after all a very lucrative type of case with minimal upfront costs.

Defendant asserts that the Plaintiff is not entitled to a preliminary injunction based on the established legal standard, contending that Plaintiff has misled the court. Defendant argues that even if Plaintiff claims otherwise, Defendant brought attention to defects in the

case that should have prompted the Plaintiff, as a protector of intellectual property, to reassess its allegations. Defendant suggests that Plaintiff's pursuit of financial gain is the primary motivation, given the lucrative nature of such cases with minimal upfront costs.

If Plaintiff were to apply for the injunction with Defendants facts in tow, it would be clear that it has not met the legal standard for a Preliminary Injunction as follows:

1. **MERITS**

Plaintiff makes broad and conclusory allegations throughout its entire Complaint, initially targeting 283 defendants. Subsequently, all those defendants are left to decipher the basis for Plaintiff's claims.

Nowhere in the Complaint coes Plaintiff demonstrate how the allegedly infringing item by Defendant is likely to cause confusion among consumers. Moreover, Plaintiff fails to specify which of the marks referenced in its Complaint is asserted against Defendant. Plaintiff repeatedly asserts the blanket conclusion that all defendants are offering for sale and selling products bearing counterfeit marks, creating fake online storefronts designed to appear to be selling genuine Plaintiff products.

In accordance with legal precedent, when a court issues a preliminary injunction, it is generally required to conduct a product-by-product infringement analysis. See *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 944 (Fed. Cir. 2022) (vacating preliminary injunction where "district court failed to make product-by-product infringement findings"). The evidence screenshots in Exhibit E shows a photo of a genuine product. Plaintiff did not purchase this product from Defendant despite their knowledge of it. Just because they say it is not genuine, doesn't mean it's true. In fact, a customer in March, 2023 purchased this product, way before Plaintiff's infringement claims **(EXH. E Fig. 11 & 13) (EXH F).** As Plaintiff did not purchase it, it cannot possibly deduce

from a photo that this product was not a genuine product. A true collector like Defendant, would have to inspect the contents to make any fair conclusions. Defendant's customer purchased the product, and has never been in touch since purchasing to complain in any way. Of course, with this item being for collectors, and priced accordingly, it's not a product anyone would pick off the shelf and accept if there were any doubts.

Based on the facts Defendant has provided, if Plaintiff were submitting their motion today, it is unlikely that Plaintiff would prevail on the merits and therefore would not be entitled to a preliminary injunction.

2. **IRREPARABLE HARM**

Unless Plaintiff has provided false information to the courts, it is implausible for them to have demonstrated or be able to present any evidence of any harm.

It's a joke that Plaintiff has submitted screenshots dated 2019. Plaintiff has been content with the item being for sale on eBay for 4 years and didn't consider any irreparable harm until *after* the product was no longer available.

At the time of submitting the complaint, Plaintiff faced no irreparable harm, given the item sold months earlier. **(Au Decl. ¶¶ 17, 18, 20 & 24).** Defendant has informed Plaintiff of these defects, and still is met by request to settle for a payment. Plaintiff cannot be possibly be injured from Defendants activities. If Plaintiff really wanted to bring a claim against Defendant, it could have purchased the product when it became aware of it being for sale on Defendant's eBay shop. Defendant is certain, that if that had happened, Plaintiff would have seen it was a genuine product.

The continued denial of access to all unrelated funds poses a considerable hardship on Defendant and Defendant's family, particularly due to the personal liability associated with being self-employed. Plaintiff cannot convincingly demonstrate any harm let alone future

harm that is sufficiently likely to justify enjoining the Defendant from accessing their funds. Such an action would inflict a severe, possibly permanent, impact on their supplemental income, putting their livelihood at serious risk.

### 3. BALANCE OF HARMS WEIGHS IN DEFENDANT'S FAVOUR

There is no justifiable basis for continuing to restrain the accounts belonging to Defendant. There was no justifiable basis at the start and more importantly since Defendant informed Plaintiff, the item was sold months ago. **(Au Decl. ¶ 19).**

An injunction is typically warranted when the plaintiff is reasonably likely to face irreparable harm due to the defendant's future unlawful and injurious conduct. Here however, Plaintiff faces no such irreparable harm, as there is no evidence or basis to believe that Defendant will engage in any of the complained-of conduct in the future. There is no evidence Defendant has ever engaged in any of the complained-of conduct.

Plaintiff lacks a basis for a preliminary injunction against Defendant for several reasons: a) Defendant sold the item in March 2023; b) Its Payoneer account is restrained; c) Defendant has declared they will never intentionally purchase fake items, and if it would found an item was questionable in any way, Defendant would never list if for sale. **(Au Decl. ¶¶ 7, 17, 20, 24 & 35).**

This case has left Defendant unable to continue with their legitimate supplemental work, access any income from non-related products, and consequently, be in any financial position to afford their own attorney in the United States. **(Au Decl. ¶¶ 40-42).** It is evident that Plaintiff has abused the legal process to seize assets without providing any prior notice and has unreasonable and vexatiously lengthened proceedings to damage Defendant even more as Defendant is not prepared to settle and pay money simply because it's account is being held to ransom.

Defendant is certain that these facts being presented to the court at the start would have seen a complete denial of restraint by the Court.

**FINAL REMARK**

Defendant respectfully implores the Court to closely examine plaintiffs who employ the strategy of mass-producing Schedule A lawsuits, all featuring nearly identical wording in their complaints. This approach ensnares numerous innocent individuals, often with the primary aim of extracting monetary settlements. While these plaintiffs may argue that it involves substantial work at the outset, the practice of filing a single lawsuit encompassing hundreds of unrelated defendants without individual due diligence is unreasonable and harmful. Many of these defendants lack the resources to mount a proper defense, particularly small home-based sellers earning a minimal wage. The balance of harms not only favors Schedule A Defendants but specifically those with limited financial means—self-employed individuals bearing full liability and often collateral damage.

A recent minute entry in this district by Judge LaShonda A. Hunt raises pertinent questions about joinder and conclusory allegations in a similar Schedule A type case (*Kayomi Hari v. Partnerships, et al,* No. 1:23-cv15960). The court questions the plausibility of alleging that all defendants are sufficiently connected for joinder and emphasizes the need to reduce the Schedule A to a maximum of 40 defendants to balance continuing harms to the plaintiff, the due process rights of defendants, and judicial economy.

The ability to file a case enjoining hundreds of defendants encourages frivolous filings, burdening the public far beyond the initial $402 filing fee paid by the Plaintiff. As aptly explained by another court, "[d]istinct individuals or entities independently selling counterfeit goods over the internet [do] not satisfy the transaction or occurrence requirement

of FRCP 20.6." *Ontel Prods. Corp. v. Uninc. Ass'ns Identified in Schedule A,* No. 1:21cv1452 (MSN/JFA), 2022 WL 9874815, at *5 (E.D. Va. Aug. 12, 2022).

Notably, only one judge in this district, Judge Seeger, appears to consistently challenge these specific filing types. Judge Seeger regularly questions the basis of an asset freeze and the requests to file under seal. Cases presided over by Judge Seeger rarely proceed beyond such questioning. When they do, plaintiffs tend to reduce the size of the Schedule A list down to one or two defendants. The reasons for dropping the rest of the defendants in Judge Seeger's cases remain speculative.

## CONCLUSION

The Court is respectfully urged to dissolve the preliminary injunction and, in light of the false representations and frivolous legal arguments presented by Plaintiff, consider sanctioning the Plaintiff for violating Rule 11. The factual circumstances of this case, in contrast to the unsupported generalizations put forth by Plaintiff, do not substantiate the grant of such an extraordinary remedy.

Even if the Court acknowledges plausible causes of action against Defendant, the Plaintiff fails to establish the requisite irreparable harm, as the evidence is outdated, predating the filing of the complaint by years. Injunctive relief is fundamentally designed to protect against future harm, not harm that has already passed. Given that there was no harm in the past and no indication of future harm, the injunction never served, and no longer serves, any legitimate purpose.

In light of Plaintiff's false statements, the Court is encouraged to evaluate whether dismissal with prejudice of all remaining Schedule A Defendants and the case as a whole, is an appropriate sanction as a minimum.

It is noteworthy that, to date, Plaintiff has not responded to the Answer and Defenses filed by Defendant.

WHEREFORE, the Court should dissolve the Preliminary Injunction, order eBay and Payoneer to release Defendant's accounts, and fully dismiss outright.

DATED: February 5th, 2024                                       Respectfully submitted,

/s/ AU MAN FEI

Defendant 133
HOBBYKOLLECTIBLES
hobbymen@yahoo.com
Rm 07, 17F, Pak King House, Siu Shan Court,
Tuen Mun, Hong Kong, China
*pro se litigant*

**CERTIFICATE OF SERVICE**

The undersigned individual hereby certifies that a true and correct copy of the motion, declaration and supporting exhibits were filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on February 5, 2024.

/s/ AU MAN FEI